UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER M.,<br><br>               Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>               Defendant. | CASE NO. C18-5501-RAJ<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1980.[1]  He has a high school diploma and his past jobs include apartment maintenance worker, data entry clerk, and aircraft assembler.  (AR 55-57, 272.)

Plaintiff applied for DIB and SSI in September 2012, alleging disability beginning September 1, 2009.[2]  (AR 219-28.)  His applications were denied at the initial level and on reconsideration, and he timely requested a hearing.  (AR 139-42, 152-67.)  On February 4, 2014, ALJ Robert Kingsley held a hearing, taking testimony from Plaintiff and a vocational expert (VE).  (AR 36-82.)  On May 20, 2014, the ALJ issued a decision finding Plaintiff not disabled.  (AR 14-30.)

Plaintiff timely appealed.  The Appeals Council denied Plaintiff's request for review on January 27, 2016 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court, which reversed the ALJ's decision and remanded for further proceedings to reevaluate certain medical opinions.  (AR 716-26.)

ALJ Allen Erickson held a hearing on August 31, 2017, taking testimony from Plaintiff and a VE.  (AR 608-77.)  The ALJ issued a decision on April 20, 2018, finding Plaintiff not disabled.  (AR 583-97.)  Plaintiff now seeks judicial review of that decision.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

///

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

[2] Plaintiff subsequently amended his alleged onset date to January 5, 2012.  (AR 618.)  Plaintiff also applied for DIB again on January 29, 2016, and the Appeals Council consolidated that claim with the 2012 applications.  (AR 730-35, 901-07.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 2

# DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not worked since the amended alleged onset date. (AR 586.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's lumbar spine degenerative disc disease, spondylolisthesis, and pseudoarthritis with status post surgeries; chronic pain syndrome; major depressive disorder; attention deficit hyperactivity disorder; post traumatic stress disorder; and anxiety disorder. (AR 586.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 588-89.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform sedentary work with additional limitations: he cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps/stairs and balance, stoop, kneel, crouch, and crawl. He can occasionally use foot controls bilaterally. He can be occasionally exposed to vibration and extreme cold temperatures. He can understand, remember, and apply short, simple instructions and perform routine, predictable tasks, but not in a fast paced, production-type environment. He can make simple decisions and have occasional interaction with the general public. (AR 589.) With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. (AR 596.)

The ALJ proceeded to step five of the sequential evaluation, where the burden shifts to the Commissioner to demonstrate that the claimant retains the capacity to make an adjustment to work

that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of performing other jobs, such as envelope addresser, document clerk, and surveillance system monitor. (AR 596-97.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) assessing certain medical opinions, (2) discounting his subjective testimony, and (3) discounting a lay statement. He asks that the ALJ's decision be reversed and her claim remanded for an award of benefits or, in the alternative, for further proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

## Medical opinion evidence

Plaintiff challenges the ALJ's assessment of opinions provided by treating and examining sources, each of which the Court will address in turn.

### Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

A.  Jennifer Irwin, M.D.

Dr. Irwin examined Plaintiff in October 2012 and completed a narrative opinion describing his symptoms and limitations. (AR 383-87.) Dr. Irwin's medical source statement reads as follows, in relevant part:

> [Plaintiff] accepts instructions from supervisors. His ability to interact with coworkers and the public is moderately impaired by history.
>
> His ability to perform work activities on a consistent basis without special or additional instructions is moderately to markedly impaired by memory.
>
> His ability to complete a normal workday/workweek without interruption from a psychiatric condition is moderately impaired.
>
> His ability to deal with the usual stress encountered in the workplace is moderately impaired.

(AR 387.) In the prior ALJ decision, the ALJ found that Plaintiff could "perform simple routine tasks. He can have occasional superficial contact with co-workers and the public. He can have few, if any, changes in routine or setting." (AR 19.) The prior ALJ gave significant weight to Dr.

Irwin's opinion, and indicated that his RFC assessment was consistent with the moderate limitations identified by Dr. Irwin by "restricting him to only few, if any, changes in routine or setting." (AR 26.)

In the prior remand order, the court found that the ALJ did not fully account for Dr. Irwin's opinion, because Dr. Irwin had not indicated that Plaintiff's moderate limitations in the ability to complete a normal workday/workweek without interruptions, or in the ability to deal with workplace stress, were related to the performance of certain tasks. (AR 723.) The court also found that the ALJ's RFC assessment failed to account for Dr. Irwin's opinion that Plaintiff was "moderately to markedly" impaired in his ability to consistently perform work activities without special or additional instructions. (AR 722.)

In this ALJ decision, the mental limitations included in the RFC assessment are similar, but not identical to the prior decision: "[Plaintiff] can understand, remember, and apply short, simple instructions and perform routine, predictable tasks, but not in a fast paced, production type environment. He can make only simple decisions and can have only occasional interaction with the general public." (AR 589.) And again, the ALJ gave significant weight to Dr. Irwin's opinion, but this time did not explain how the RFC assessment accounted for the limitations Dr. Irwin specified. (AR 594.)

The Commissioner argues that the ALJ's RFC assessment either accounts for the limitations identified by Dr. Irwin, or that his failure to do so is harmless because the jobs specified at step five are not inconsistent with Dr. Irwin's opinion. Dkt. 16 at 6-8. But the Commissioner's brief does not mention Dr. Irwin's opinion that Plaintiff is "moderately to markedly" impaired in his ability to consistently perform work activities without special or additional instructions, or explain how it is accounted for in the ALJ's RFC assessment or irrelevant to the step-five jobs.

*See* Dkt. 17 at 3 ("The Defendant did not present any argument for excusing the ALJ from considering this particular limitation identified by Dr. Irwin."). The Commissioner did attempt to show that other portions of Dr. Irwin's opinion were accounted for in the ALJ's RFC assessment. Dkt. 16 at 7-8. But because the ALJ's RFC assessment does not reference Plaintiff's need for special or additional instructions, it does not fully account for Dr. Irwin's opinion and the ALJ therefore erred in failing to explain the discrepancy between Dr. Irwin's opinion and the RFC assessment. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

This error should be remedied by a remand for further proceedings, rather than for a finding of disability, because there are conflicts in the record that require resolution before such a finding would be appropriate. For example, although Plaintiff contends that Dr. Irwin's opinion clearly supports disability in light of VE testimony (Dkt. 17 at 4 (citing AR 75, 667)), no VE actually testified as much. The VEs testified that limitations described by counsel (not Dr. Irwin) would preclude work, but counsel's limitations went beyond what was included in Dr. Irwin's opinion. (AR 75, 667.) Furthermore, Dr. Irwin rated Plaintiff's Global Assessment of Functioning (GAF) at 60 (AR 386), which does not necessarily suggest a disabling level of impairment. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (indicating that a GAF of 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning). The conflicts in the record should be resolved with further proceedings. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1101, 1105 (9th Cir. 2014).

B.   W. Michael Rogers, Psy.D.

Dr. Rogers examined Plaintiff in May 2016 and wrote a narrative report describing his

symptoms and limitations. (AR 1380-84.) His functional assessment reads as follows:

> [Plaintiff] appears to have the capacity to reason and to understand. Memory functioning seems impaired – recent and immediate recall obviously so. He reports that persistence and concentration are impaired. Test items that assess for gross concentration do in fact suggest impairment in this area. [Plaintiff] prefers to isolate given his history of negative encounters with others. He comes across as anxious. Activities of daily living are manageable with assistance. [Plaintiff] reports limited vocational experience. His overall level of adaptation seems guarded.

(AR 1383.) The ALJ summarized Dr. Rogers' opinion and gave it "some weight," stating: "His assessment of mental restrictions is supported by the evidentiary record that includes several mental limitations. However, Dr. Rogers appears to rely on what the claimant told him, rather than on objective medical findings." (AR 594.) This reasoning is internally inconsistent and inaccurate. The ALJ's finding that Dr. Rogers' opinion is supported by the evidentiary record is inconsistent with his finding that Dr. Rogers relied on Plaintiff's self-report, and Dr. Rogers' opinion does mention Plaintiff's self-report but then goes on to explain how that report was corroborated by testing. The ALJ's reasoning is therefore not legitimate, and the ALJ should reconsider Dr. Rogers' opinion on remand.

C.   <u>Kimberly Wheeler, Ph.D.</u>

Dr. Wheeler examined Plaintiff in August 2017 and completed a DSHS form opinion describing his symptoms and limitations. (AR 1552-56.) At the time of Dr. Wheeler's examination, Plaintiff had been separated from his wife for less than a week, and Dr. Wheeler's notes and observations reflect this period of acute stress and overwhelm. (*Id.*)

The ALJ summarized Dr. Wheeler's opinion and explained that he gave little weight to Dr. Wheeler's opinion because she did not cite objective evidence to support the checkbox limitations, and because she did not have the benefit of considering the longitudinal record during her

examination. (AR 594.)

These are specific, legitimate reasons to discount Dr. Wheeler's opinion. Dr. Wheeler did not explain the basis for her opinions, and the severe symptoms described during her examination were not consistent with the remainder of the record. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). Dr. Wheeler herself noted on multiple occasions that Plaintiff was especially limited at the time of the examination, due to the recent marital separation, which corroborates the ALJ's finding that Dr. Wheeler's conclusions are undermined by her lack of longitudinal perspective. (AR 1553 (Dr. Wheeler's description of Plaintiff's symptoms "[i]n the context of a fresh marital separation," with "[a]cute stressor of marital separation a week ago"), 1555 (Dr. Wheeler's treatment recommendations in light of "[c]omplicated mix of childhood emotional trauma coming back up in light of current marital and custody chaos"), 1556 (Dr. Wheeler notes that Plaintiff's concentration is "[a]bysmal right now").) Plaintiff has not established that the ALJ erred in discounting Dr. Wheeler's opinion.

D.   Cara Lee, M.D.

Dr. Lee examined Plaintiff in July 2014 and assessed whether his back, hip, and leg pain could be resolved via surgery. (AR 575-77.) Dr. Lee described Plaintiff as having a "profound disability from lumbopelvic pain" and indicated that he would need to engage in physical therapy and eliminate his narcotic use to determine whether surgery could be helpful. (AR 576-77.)

The ALJ noted that Dr. Lee described Plaintiff as disabled, but indicated that he gave little

weight to the opinion because it was formed after one visit, "rather than on a history of treating or examining the claimant." (AR 595.) Plaintiff argues that the ALJ's characterization of Dr. Lee's relationship with Plaintiff is inaccurate, because she did examine Plaintiff. Dkt. 10 at 10. This argument misunderstands the ALJ's decision, however: the ALJ did not find that Dr. Lee had not examined Plaintiff (as Plaintiff alleges (Dkt. 10 at 10)), but indicated that Dr. Lee did not have a "history of treating or examining the claimant" (AR 595), which is true, because Dr. Lee examined Plaintiff only one time. The ALJ did not err in considering the depth of the relationship between Dr. Lee and Plaintiff when assessing Dr. Lee's opinion, or the scant information about Plaintiff's functionality available to support her opinion regarding disability. *See* 20 C.F.R. §§ 404.1527(c)(6), (d).

E.      Ross Vogelgesang, M.D.

Dr. Vogelgesang is Plaintiff's treating pain management physician, and one of his treatment notes from May 2017 includes a reference to whether Plaintiff can work: "At this juncture it is my professional belief that [Plaintiff] is unable to work due to his PLPS and overlying psychiatric issues. With proper treatment of both of these issues I believe he could return to work." (AR 1489.) The ALJ did not discuss this specific treatment note.

Dr. Vogelgesang's opinion regarding Plaintiff's ability to work pertains to an issue reserved to the Commissioner, and he did not cite any particular evidence that corroborates this opinion. *See* 20 C.F.R. § 416.927(d); SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996). Any error in the ALJ's failure to explicitly discuss this treatment note is harmless because the ALJ considered the entirety of the record to determine the impact of Plaintiff's pain, and Plaintiff has not identified any error in the ALJ's physical RFC assessment.

/ / /

Other testimonial evidence

Plaintiff also challenges the ALJ's discounting of his testimony and his wife's written statement. The ALJ discounted Plaintiff's testimony in part based on an examination of the medical opinion evidence, which, as explained *supra*, contains errors. (AR 591-92.) The ALJ's reconsideration of the disputed medical opinions requires the ALJ to also reconsider Plaintiff's testimony to determine the extent to which his allegations are consistent with the remainder of the record.

Lastly, Plaintiff challenges the ALJ's rejection of his wife's written statement. (AR 319-20.) The ALJ discounted Plaintiff's wife's statement solely because she mentioned medical diagnoses and attributed limitations to those conditions, even though she is a layperson. (AR 595.) This reasoning is not sufficient. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017) ("[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition."; "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing."). On remand, the ALJ shall reconsider Plaintiff's wife's statement and either credit it or provide legally sufficient reasons to discount it.

CONCLUSION

For the reasons set forth above, the Court recommends that the ALJ's decision should be REVERSED and this matter REMANDED for further administrative proceedings. On remand, the ALJ should reconsider the opinions of Drs. Irwin and Rogers, and reconsider the testimony of Plaintiff and Plaintiff's wife.

/ / /

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 19, 2019**.

DATED this 2nd day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE - 12